**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Spectrum Laboratories, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:24-cv-00029-MWM |
| | ) | |
| vs. | ) | Judge Matthew W. McFarland |
| | ) | |
| Fire On Location Corporation et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>Spectrum's Motion for Default Judgment against Fire On Location Corporation</u>**

In accordance with Fed. Civ. R. 55, plaintiff Spectrum Laboratories, LLC moves for default judgment against defendant Fire On Location Corporation ("FOLC").

On April 30, 2025, the Clerk entered default against FOLC because it had failed to appear or to respond to the complaint by the July 15, 2025 deadline for doing so. (*See* ECF 8, 22.) Default judgment is now appropriate.

Spectrum requests that the Court enter the proposed default judgment order attached hereto, which: (a) declares FOLC liable as an infringer Spectrum's QUICK FIX and Q-Clock marks; (b) declares FOLC liable for cyberpiracy under the Lanham Act with respect to the <quickfix.plus> domain name and orders a transfer of the domain name to Spectrum; (c) awards profit disgorgement damages under the Lanham Act of $202,351.61; (d) awards Spectrum its reasonable attorneys' fees of $51,179.80 and costs of $405; and (d) permanently enjoins FOLC, its officers, agents, servants, employees, attorneys, and any persons in active concert or participation with FOLC or those persons, from (i) using the QUICK FIX or Q-CLOCK marks, or anything confusingly similar to those marks in commerce, including (without limitation) on or in connection with websites, email addresses, domain

36106972.2

names, products, offerings of services or products, or any digital or print advertising materials, (ii) committing any of the infringing conduct identified in Spectrum's first amended complaint in this action, or (iii) otherwise infringing any of the trademark rights asserted by Spectrum in this action.

The reasons for granting this motion are more fully explained in the memorandum in support, which is attached and incorporated by reference.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td><u>Dated</u>: May 2, 2025</td><td> s/ Matthew J. Cavanagh<br>Matthew J. Cavanagh (OH 0079522)<br>MCDONALD HOPKINS LLC<br>600 Superior Ave., East, Ste. 2100<br>Cleveland, Ohio 44114<br>t 216.348.5400 │ f 216.348.5474<br>mcavanagh@mcdonaldhopkins.com<br><br>*Counsel for Spectrum Laboratories, LLC*</td></tr>
</table>

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| Spectrum Laboratories, LLC, | ) |
|  | ) Case No. 1:24-cv-00029-MWM |
| Plaintiff, | ) |
|  | ) Judge Matthew W. McFarland |
| vs. | ) |
|  | ) |
| Fire On Location Corporation et al., | ) |
|  | ) |
| Defendants. | ) |

### Spectrum's Memorandum in Support of
### Motion for Default Judgment against Fire On Location Corporation

**I.      Introduction**

Plaintiff Spectrum Laboratories, LLC submits this memorandum in support of its Motion for Default Judgment against defendant Fire On Location Corporation ("FOLC").

As explained below and in Spectrum's amended complaint, FOLC stole, copied, and infringed Spectrum's federally-registered QUICK FIX and Q-CLOCK trade-marks mark by, among other things, misappropriating the QUICK FIX mark as a business name by calling its business "Quick Fix Plus," creating a fraudulent "Quick Fix Plus" logo that incorporates Spectrum's QUICK FIX and Q-CLOCK marks, operating an online store at the QuickFix.Plus domain name to sell products, including those that compete with Spectrum, and displaying the QUICK FIX and Q-CLOCK marks on its QuickFix.Plus website without Spectrum's permission. FOLC has done so with the specific intent of confusing customers into believing that FOLC is the source of Spectrum's *Quick Fix* products or is associated with Spectrum. Such willful infringement unjustly enriches FOLC, causes Spectrum to lose sales, and causes irreparable harm to Spectrum's goodwill and reputation. This is why Spectrum sued.

36107575.2

Because FOLC is now in default, Spectrum respectfully asks this Court to grant the requested default judgment.

## II.     Statement of Facts

### A.     By defaulting, FOLC admits Spectrum's allegations.

On April 30, 2025, the Clerk entered default against FOLC because it did not move, plead, or otherwise respond to the complaint by the July 15, 2024 deadline for doing so. (ECF 8, 22.) Because of that default, the factual allegations in Spectrum's amended complaint are deemed admitted, and FOLC's liability for willful trademark infringement and cyberpiracy is established. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (upon entry of default, the factual allegations of the complaint are deemed admitted); *see also Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (entry of default "conclusively establishes every factual predicate of a claim for relief").

### B.     FOLC willfully infringed Spectrum's trademark rights and committed cyberpiracy.

Spectrum is the supplier of a popular synthetic urine product called *Quick Fix*. (Am. Compl. ¶ 1, 14-15, ECF 6.) Spectrum owns a variety of intellectual property rights related to its business and the *Quick Fix* products, including patents, trademarks, and at least one copyright. (*Id.* ¶ 16.) The U.S. Patent and Trademark Office deemed the chemical formula for *Quick Fix* to be new and useful and worthy of at least two patents. (*Id.* ¶ 17.)

Spectrum sued when it learned that FOLC had set up an online business called "Quick Fix Plus" at the QuickFix.Plus domain name and was selling Spectrum's *Quick Fix* products and competing products on the website. (*Id.* ¶ 27 and Ex. F-H (screenshots of FOLC's infringing website).) Not only had FOLC infringed Spectrum's trademark rights by calling its

2

business "Quick Fix Plus," but FOLC also had created a "Quick Fix Plus" logo for its business that incorporated Spectrum's QUICK FIX and Q-CLOCK logo:



(*Id.* ¶ 23(C).) Some other examples of FOLC's infringement and attempts to confuse customers are FOLC referring to the *Quick Fix* product on FOLC's website as "our proven formula" when FOLC does not own *Quick Fix* or its formula, using the QUICK FIX mark in company email addresses, such as support@quickfix.plus, and reproducing the QUICK FIX mark many times throughout the QuickFix.Plus website. (*Id.* ¶ 23, 25, 27, Ex. F-H (ECF 6-6, 6-7, and 6-8) (infringing website)).

This conduct constitutes, among other things, trademark infringement and cyberpiracy under the Lanham Act. The acts by FOLC are willful because it intentionally used Spectrum's trademarks, knowing it had no permission to do so, with the specific intent of making money, including by selling third-party products that compete directly with Spectrum. (Am. Compl. ¶ 3-4, 22-29, 38.)

FOLC's willful infringement and cyberpiracy have unjustly enriched FOLC, caused Spectrum lost sales, deceived customers, and caused irreparable harm to Spectrum its goodwill and reputation. (*See* Am. Compl. ¶ 4-5, 39, 57.)

Spectrum now seeks default judgment in its favor against FOLC.

**III. Law and Argument**

  **A. Default judgment is now appropriate.**

Under Fed. Civ. R. 55, the Court may order default judgment following the entry of default by the Clerk of Courts. Fed. R. Civ. P. 55(b); *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986) ("entry of default is just the first procedural step on the road to obtaining a default judgment"). Because the Clerk entered default, default judgment is now appropriate.

  **B. Spectrum has stated valid claims against FOLC.**

"A court deciding whether to grant a motion for a default judgment should satisfy itself that the facts in the complaint state a claim for relief against the defendant." *Kuhlman v. McDonnell*, No. 1:20-CV-510, 2022 WL 407240, at *2 (S.D. Ohio Feb. 10, 2022) (citing *Harrison v. Bailey*, 107 F.3d 870 (Table), 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997)).

Again, because FOLC had defaulted, the Court accepts as true all factual allegations in Spectrum's amended complaint. *Antoine*, 66 F.3d at 110 (upon entry of default, the factual allegations of the complaint are deemed admitted); *see also Nat'l Auto Group, Inc. v. Van Devere, Inc.*, No. 5:20-cv-2543, 2022 WL 80324, at *2 (N.D. Ohio Jan. 7, 2022).

To simplify things for purposes of this default judgment motion, Spectrum seeks a declaration of liability and relief only as to Count One (Trademark Infringement under 15 U.S.C. § 1114 and 1125) and Count Six (Cyberpiracy under the Lanham Act).

    **1. Spectrum has stated a valid claim for trademark infringement under 15 USC § 1114 and 1125.**

A plaintiff proves trademark infringement under § 1114 and 1125 by showing that (i) it owns the asserted trademarks, (ii) the infringer used the infringing marks in commerce

4

without authorization, and (iii) the use of the infringing marks is likely to cause customer confusion. *AWGI, LLC v. Atlas Trucking Co.*, 998 F.3d 258, 264 (6th Cir. 2021); *Too, Inc. v. TJX Cos.*, 229 F. Supp. 2d 825, 829 (S.D. Ohio 2002).

Spectrum's federal trademark registrations, which are attached to its complaint (ECF 6-3, 6-4), prove its ownership of both marks. *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark ... shall be prima facie evidence of ... the owner's ownership of the mark."); *see also Dunkin' Donuts Franchised Restaurants LLC v. N. Thakkar, Inc.*, No. 1:08-cv-245, 2009 WL 10679563, at *4 (S.D. Ohio June 9, 2009) (federal registrations establish that marks are "valid and legally protectable).

FOLC's use in commerce of Spectrum's QUICK FIX and Q-CLOCK marks is established by Spectrum's factual allegations in its amended complaint and the exhibits to it, which show FOLC's website using both marks in the website's logo and the QUICK FIX mark in the domain name, the website's business name, and throughout the website. (Am. Compl. ¶ 23-24, Ex. F-H.)

Spectrum's factual allegations and evidence of FOLC's website use of the QUICK FIX and Q-CLOCK marks to sell Spectrum's and competitor's products establish that both the marks and goods are identical to Spectrum's, and thus Spectrum's allegation of likelihood of confusion is more than plausible. *See Gen'l Motors Corp. v. Autovation Technologies, Inc.*, 317 F. Supp.2d 756, 761 (E.D. Mich. 2004) ("a likelihood of confusion is presumed when a defendant intentionally copies a trademark design with the intent to derive a benefit from the reputation of another") (citations omitted); *see also AWGI*, 998 F.3d at 266 ("if the parties compete directly, confusion is likely if the marks are sufficiently similar").

Thus, Spectrum's likelihood of confusion allegations are well supported and should be deemed admitted and established.

### 2. Spectrum has stated a valid claim for cyberpiracy under the Lanham Act.

To state a valid claim for cyberpiracy under the Lanham Act, Spectrum must allege that it owns a distinctive mark, and FOLC used a domain name that is confusingly similar to the mark with bad faith intent to profit from the mark. 15 U.S.C. § 1125(d); *see also DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004); *Global Licensing, Inc. v. Namefind LLC*, 582 F. Supp. 3d 467, 475 (E.D. Mich. 2022).

Spectrum's federal registration establishes that the QUICK FIX mark is distinctive. *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 802 (6th Cir. 2004) ("registration ... entitles [owner] to a presumption of distinctiveness").

The <quickfix.plus> domain name is confusingly similar to the QUICK FIX mark because the domain name is the Spectrum trademark with only the .plus generic top-level domain (gTLD) tacked on it. Courts agree that the "addition of a top-level domain suffix to a protected mark is irrelevant." *Diners Club Int'l Ltd. v. privatedinersclubportal.co.uk*, No. CV-24-01559, 2025 WL 588222, at *5 (D. Ariz. Feb. 24, 2025) (citing cases). Furthermore, Spectrum sells a variety of *Quick Fix* products called "*Quick Fix* Plus," (Am. Compl. ¶ 14, 29), so adding the .plus suffix to QUICK FIX only increases confusion and further exposes FOLC's intent to cause confusion between itself and Spectrum.

As for FOLC's bad faith intent to profit, Spectrum's allegation that FOLC had such intent is deemed admitted due to FOLC's default. Moreover, the same factual allegations that support Spectrum's allegations that FOLC's infringement was willful, (Am. Compl. ¶ 3-4, 22-

6

29), also support the bad faith intent to profit allegation, including that FOLC copied Spectrum's trademarks as its own business name and to create its business logo to sell Spectrum's products and competing ones. *See Yelp Inc. v.* Catron, 70 F. Supp. 3d 1082, 1097-98 (N.D. Cal. 2014) (entering default judgment on cyberpiracy claim); *Crossfit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1096-99 (D. Colo. 2014) (same); *Adv. Magazine Publ'rs, Inc. v. Tinsley*, No. 3:18-cv-13575, 2019 WL 1285089, at *4 (E.D. Mich. Mar. 20, 2019) (same).

Other bad-faith factors set forth under the Lanham Act also weigh against FOLC, including its lack of intellectual property rights in the domain name, the domain name does not consist of the FOLC's legal name, intent to confuse customers for commercial gain, and the use is not fair use (at least because FOLC is using Spectrum's marks to sell competing products). *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I), (II), (IV), (V).

Thus, Spectrum has stated a valid claim for cyberpiracy, and the Court should declare FOLC liable accordingly.

      **C.**    **The Court should order profit disgorgement damages against FOLC.**

Under 15 U.S.C. § 1117(a), Spectrum may recover "defendant's profits." By statute, to prove defendant's profits, Spectrum "shall be required to prove defendant's sales only," and "defendant must prove all elements of cost or deduction claimed." *Id.* Thus, the Act requires courts to "assume that the defendant's profits equal his gross sales unless he presents evidence of his costs." *Taylor v. Thomas*, 624 Fed. App'x 322, 328 (6th Cir. 2015) (affirming award of revenues as profit disgorgement damages under the Lanham Act where defendant "did not present any evidence of costs"); *accord Dyson Technology Ltd. v. David 7 Store*, 132 F.4th 526, 529 (7th Cir. 2025) ("The Act presumes that the infringing defendant's sales (that

7

is, revenue) and profits *are* the same thing, until the defendant proves otherwise.") (emphasis in original).

After Spectrum sued, FOLC disclosed ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (Cavanagh Declaration, att'd as Ex. A, ¶ 6-7.) FOLC disclosed these to Spectrum on condition that they be treated as CONFIDENTIAL under this Court's one-tier standard protective order. (*Id.*) Thus, Spectrum is redacting ▬▬▬ from this public version of this memorandum, and concurrently seeks leave to file an unredacted version under seal.

Because Spectrum's only burden is to prove revenues to disgorge profits under the Lanham Act, and FOLC has not appeared to prove any elements of cost or deductions, the Court should ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ as profit disgorgement damages.

### D. The Court should award attorneys' fees to Spectrum.

The Court should award Spectrum its reasonable attorneys' fees of $51,1793.80, which are confirmed by the attached declaration. (Cavanagh Decl.)

The Lanham Act allows attorney fee awards for "exceptional" cases, and courts view willful infringement as exceptional. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."); *Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998). Thus, courts in the Sixth Circuit award attorneys' fees under § 1117(a) as part of a default judgment for infringement when, as here, plaintiff properly pleads willfulness. *See Great Lakes Transportation Holding LLC v. AAA Metro Limo, LLC*, No. 24-11193, 2024 WL 4525338 (E.D. Mich. Sept. 4, 2024); *Juul Labs, Inc. v. Fli High, LLC*, No. 1:21-cv-00872, 2021 WL 3633512, (N.D. Ohio Aug. 17, 2021); *FenF, LLC v. Welnove Inc.*, 2:23-cv-

8

13181, 2024 WL 3588451, at * (E.D. Mich. June 3, 2024) ("As a result of the willful infringement, the Court declares this case to be exceptional and awards Plaintiffs' attorneys' fees ..."). Moreover, this court has found a defendant's failure to appear to defend against trademark infringement case sufficient to render the case exceptional and awarding attorneys' fees under the Lanham Act. *Gillette Co. v. Save & Discount LLC*, No. 1:15-cv-636, 2016 WL 3745764, at *4 (S.D. Ohio 2016); *see also MCP IP, LLC v. .30-06 Outdoors, LLC*, No. 2:21-cv-581, 2023 WL 2768190, at *1 (S.D. Ohio Apr. 4, 2023) (construing identical "exceptional" language under Patent Act, finding default rendered the case exceptional, and awarding fees) (citing cases).

As explained above, Spectrum's well-pleaded allegations of willfulness are deemed admitted by FOLC's default. (*See supra* pp. 2-3.) And separately, FOLC's default renders the case exceptional and fee-worthy. *See MCP*, 2023 WL 2768190, at *1; *Gillette*, 2016 WL 3745764, at *4. Thus, the Court should award Spectrum its reasonable fees under 15 U.S.C. § 1117(a).

To determine the appropriate amount of fees, this Court applies the lodestar formula, which requires the court to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See RAK Trademarks, LLC v. Comfort Dental Mason,* LLC, No. 1:22-cv-137, 2023 WL 3743022, at *2 (S.D. Ohio 2023) (McFarland, J.); *see also MCP IP*, 2023 WL 2768190, at *1. The attached declaration by Spectrum's counsel, Matthew J. Cavanagh, confirms that he reasonably expended 97.3 hours on the litigation and that those hours are reasonable for the work that was completed. (Cavanagh Decl. ¶ 8-10, 16-17, Ex. C-2 (MH invoices).) Cavanagh's declaration also establishes that a billing rate of $526 per hour is reasonable for the Cincinnati area in light of his experience and the complex area of

9

36107575.2

intellectual property litigation. (*Id.* ¶ 11-17.) As an additional reasonableness check, Mr. Cavanagh used the Ohio State Bar Association's 2019 fee survey, which courts in this district often rely upon, adjusted for inflation, to further demonstrate the reasonableness of his fees (*id.* ¶ 14, Ex. C-3). *See MCP* IP, 2023 WL 2768190, at *2 (relying on 2019 fee survey and citing cases). Lastly, this Court "may also consider an attorney's own normal billing rates to help calculate a reasonable fee," and a $526 per hour fee for Mr. Cavanagh's work is over $100 per hour less than his $635 standard rate (Cavanagh Decl. ¶ 11), further demonstrating the reasonableness of the requested hourly rate. *See MCP IP*, 2023 WL 2768190, at *2, *citing Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995).

Applying the lodestar formula, Spectrum respectfully submits that reasonable attorneys' fees of $51,179.80 should be awarded, as well as $405 in costs for the Clerk's filing fee.

### E. The Court should enter a permanent injunction.

The Lanham Act expressly identifies a permanent injunction as appropriate relief against trademark infringement. 15 U.S.C. § 1116 ("The several courts ... shall have power to grant injunctions ... as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark ... or to prevent a violation under subsection (a), (c), or (d) of section 11125 of this title"); *see Lucky's Detroit, LLC v. Double L, Inc*., 533 F. App'x 553, 562 (6th Cir. 2013) (affirming the district court's grant of a permanent injunction for violation of Lanham Act).

Because trademark infringement causes immediate and irreparable harm to the plaintiff's goodwill and reputation by causing consumers to think plaintiff and defendant are the same or related, trademark cases are "common venues" for injunctions. *McDonald's Corp.*

10

*v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (affirming permanent injunction for trademark owner). Indeed, the Lanham Act presumes irreparable harm when trademark infringement is established. *See* 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation …").

Because irreparable harm follows from infringement, there is no adequate remedy at law, there is not hardship in requiring defendant to stop infringing, and the public interest is to prevent consumers from being misled by infringing brand names, permanent injunctions are standard relief without a hearing when an infringing defendant defaults. *Dish Network L.L.C. v. McCoy*, No. 4:15-cv-205, 2015 WL 1976387, at *5 (N.D. Ohio Apr. 30, 2015) (permanent injunction granted against defendant in default); *GS Holistics*, 2024 WL 3967271, at *5-6 (same); *Great Lakes Transportation Holding LLC v. AAA Metro Limo, LLC*, No. 24-11193, 2024 WL 4525338 (E.D. Mich. Sept. 4, 2024) (same); *Cardinal Services, Inc. v. Cardinal Staffing Solutions, LLC*, No. 2:19-cv-1743, 2019 WL 6521957, at *2 (S.D. Ohio Dec. 4, 2019) (same).

Here, unless enjoined, FOLC's infringement will cause irreparable harm to Spectrum's reputation and goodwill by confusing customers into believing that the companies are the same and mistakenly attributing FOLC's business practices to Spectrum. Moreover, the Lanham Act explicitly presumes irreparable harm, which defendant has not appeared to rebut. *See* 15 U.S.C. § 1116(a). Thus, the Court should enter a permanent injunction to enjoin FOLC against future infringement as set forth in more detail in the motion and proposed order.

### F. The Court should order transfer of the infringing domain name.

Once liability for cyberpiracy is established, transfer of the domain name to plaintiff follows as a matter of statutory law. *See* 15 U.S.C. § 1125(d)(1)(C) ("In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."); *Advance Magazine Publishers, Inc. v. Tinsley*, No. 18-cv-13575, 2019 WL 1285089, at *5, 7 (E.D. Mich. Mar. 20, 2019) (transferring infringing domain name as part of default judgment); *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1104-05 (D. Colo. 2014) (same and citing cases).

Because Spectrum has established FOLC's liability for cyberpiracy by default (*see supra* pp. 6-7), the Court should order transfer of the infringing <quickfix.plus> domain name to Spectrum.[1]

### IV. Conclusion

For these reasons, the Court should grant the requested default judgment in Spectrum's favor.

---

[1] FOLC has transferred the <quickfix.plus> domain name to Spectrum as part of the putative settlement between the parties. As explained in Spectrum's most recent status report (ECF 20), however, FOLC has repudiated that settlement by failing to deliver other consideration required by the settlement. Therefore, Spectrum seeks a Court order transferring the domain name to Spectrum so that FOLC does not attempt to argue that the repudiation of settlement entitles it to retake ownership of the infringing domain name.

12

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:   May 2, 2025 |   s/ Matthew J. Cavanagh<br>Matthew J. Cavanagh (OH 0079522)<br>MCDONALD HOPKINS LLC<br>600 Superior Ave., East, Ste. 2100<br>Cleveland, Ohio 44114<br>t 216.348.5400 │ f 216.348.5474<br>mcavanagh@mcdonaldhopkins.com<br><br>*Counsel for Spectrum Laboratories, LLC* |

13

36107575.2

**Certificate of Service**

Although Fed. Civ. R. 5(a)(2) does not require Spectrum to serve FOLC with the foregoing filing, as a courtesy, on May 2, 2025, Spectrum has served counsel for FOLC John Cook by email at jcook@barclaydamon.com.

    s/ Matthew J. Cavanagh
*Counsel for Spectrum Laboratories, LLC*

36107575.2