IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| SPECTRUM LABORATORIES, LLC, | : | Case No. 1:24-cv-29 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| QUICK FIX PLUS, et al., | : | |
| Defendants. | : | |

### ORDER AND OPINION

This matter is before the Court on Plaintiff's Motion for Default Judgment against Defendant Fire On Location Corporation ("FOLC") (Docs. 23, 26). After Defendant FOLC failed to timely respond to the Amended Complaint or appear in this matter, Plaintiff applied for an entry of default against Defendant FOLC pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 21.) The Clerk of Court properly docketed an entry of default against Defendant FOLC on April 30, 2025. (Doc. 22.) Plaintiff thereafter filed a sealed and unsealed Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b). (Docs. 23, 26.) Defendant FOLC failed to timely respond to the Motion. *See* S.D. Ohio Civ. R. 7.2(a)(2). Thus, this matter is ripe for review. For the reasons stated below, Plaintiff's Motion for Default Judgment (Docs. 23, 26) is **GRANTED IN PART**.

### FACTS

Plaintiff Spectrum Laboratories, LLC ("Spectrum") owns the trademark containing or comprising the words "Quick Fix." (Am. Compl., Doc. 6, ¶ 18.)

Additionally, Spectrum owns the trademark rights to its Q-Clock logo, for which it also holds a registered copyright. (*Id.* at ¶¶ 19–20.) The Quick Fix and Q-Clock marks are used by Spectrum in connection with its patented synthetic urine products. (*Id.* at ¶¶ 18–19.) Both marks are valid and legally enforceable, and Spectrum has sold its Quick Fix products continuously since at least 1999. (*Id.* at ¶¶ 15, 31.)

Defendant FOLC operates the QuickFix.Plus and FakeUrine.co websites, which it uses to market and sell synthetic urine products. (Am. Compl., Doc. 6, ¶¶ 23–26.) The QuickFix.Plus and FakeUrine.co websites display both the Quick Fix mark and the Q-Clock logo. (*Id.*) The QuickFix.Plus website in particular offers Quick Fix and Quick Fix Plus brand synthetic urine—products which are sold by Spectrum. (*Id.* at ¶ 23.) FOLC created and uses a Quick Fix Plus logo that incorporates both the Quick Fix mark and the Q-Clock logo. (*Id.*) FOLC refers to the Quick Fix product as "our proven formula" on the QuickFix.Plus website, and it uses email addresses that include the QuickFix.Plus domain name. (*Id.*) FOLC also sells its U-Pass brand synthetic urine product, which is not a Spectrum product, on its websites. (*Id.* at ¶ 27.) FOLC launched these websites and used the Quick Fix mark and Q-Clock logo without Spectrum's permission. (*Id.* at ¶ 22.)

Spectrum alleges that FOLC's use of the Quick Fix and Q-Clock marks likely caused consumer confusion. (Am. Compl., Doc. 6, ¶¶ 22–29.) Specifically, Spectrum alleges that FOLC sought to "deceive and confuse customers into believing that [FOLC is] Spectrum and the source of *Quick Fix* products." (*Id.* at ¶ 22.) Spectrum also notes that FOLC's use of the Quick Fix and Q-Clock marks to sell the U-Pass products "further confuses customers into believing that *U-Pass* is a Spectrum product." (*Id.* at ¶ 27.)

2

Spectrum filed this action on January 23, 2024. (*See* Compl., Doc. 1.) It amended its Complaint to include FOLC as a defendant on May 9, 2024. (*See* Am. Compl., Doc. 6, ¶¶ 22–29.) FOLC waived service on May 16, 2024. (*See* Waiver of Service Returned Executed, Doc. 8.) FOLC failed to answer or otherwise respond to the Amended Complaint within the time required by the Federal Rules of Civil Procedure. (*See* Application for Entry of Default, Doc. 21.) The Clerk, therefore, entered default against FOLC on April 30, 2025. (*See* Entry of Default, Doc. 22.) Spectrum now seeks a default judgment by the Court against FOLC. (Motion for Default Judgment, Doc. 26.)

## LAW

Federal Rule of Civil Procedure 55 governs entries of default and default judgments. A plaintiff seeking entry of default against a defendant must first show, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default. *Id.* Next, the plaintiff must apply to the court for a default judgment, except in cases where the claim "is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b).

Once default is entered against a defendant, that party is deemed to have admitted all the well-pleaded allegations in the complaint, except those related to damages. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir. 1995). A court deciding whether to grant a motion for a default judgment must still satisfy itself that the facts in the complaint state a claim for relief against the defendant. *Kuhlman v. McDonnel*, No. 1:20-CV-510, 2022 U.S. Dist. LEXIS 23846, at *4 (S.D. Ohio Feb. 10, 2022) (citation omitted). "When an application is made to the court under Rule 55(b)(2) for the entry of a judgment by default, the district

judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." 10A Wright & Miller Fed. Prac. & Proc. Civ. § 2685 (3d ed. 2013).

## ANALYSIS

In its Motion, Spectrum seeks an order: (1) entering default judgment against FOLC, (2) ordering disgorgement damages against FOLC, (3) enjoining FOLC from continuing to infringe upon the Quick Fix mark and the Q-Clock logo, (4) ordering FOLC to transfer the QuickFix.Plus domain name to Spectrum, and (5) finding that Spectrum is entitled to attorneys' fees and costs. (Motion for Default Judgment, Doc. 26.) Spectrum seeks a declaration of liability and relief only as to Counts One and Six of the Amended Complaint. (*Id.* at Pg. ID 233.) The Court will take each issue in turn.

### I. Trademark Infringement Claim

Spectrum's first claim relates to FOLC's unauthorized use of the Quick Fix mark and the Q-Clock logo. Spectrum alleges that FOLC engaged in federal trademark infringement in violation of the Lanham Act. (*See* Am. Compl., Doc. 6, at ¶¶ 30–39.) "A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *AWGI, LLC v. Atlas Trucking Co., LLC*, 998 F.3d 258, 264 (6th Cir. 2021) (quoting *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013)); *see also* 15 U.S.C. § 1114(1). The test for trademark infringement thus examines "the likelihood of confusion between the two marks." *Audi AG v. D'Amato*, 469

F.3d 534, 542 (6th Cir. 2006) (citing *Two Pesos v. Taco Cabana*, 505 U.S. 763, 780 (1992)).

Factors impacting the likelihood of confusion include: (1) the strength of the plaintiff's mark, (2) the relatedness of the goods sold under the mark, (3) the similarity of the marks, (4) evidence of actual confusion, (5) the marketing channels used, (6) the likely degree of purchaser care, (7) the defendant's intent in selecting the mark, and (8) the likelihood of expansion of the product lines. *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 792-93 (6th Cir. 2004). "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely." *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). "Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." *Id.* "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.*

In its Amended Complaint, Spectrum alleges that it has valid and enforceable trademark rights to the Quick Fix mark and the Q-Clock logo. (Am. Compl., Doc. 6, ¶¶ 18–19, 31.) It also alleges that FOLC intentionally used both the Quick Fix mark and the Q-Clock logo without Spectrum's authorization. (*Id.* at ¶¶ 22, 28.) Finally, Spectrum alleges that FOLC's unauthorized use of its trademarks creates a strong likelihood of consumer confusion, especially because both Spectrum and FOLC sell synthetic urine

5

products. (*Id.* at ¶¶ 15, 18, 23, 27.)

Deeming these allegations as admitted, the Court finds that Spectrum has established that FOLC infringed upon the Quick Fix mark and the Q-Clock logo. Therefore, Spectrum is entitled to an entry of default judgment on its trademark infringement claim.

## II. Cyberpiracy Claim

Spectrum's next claim relates to FOLC's unauthorized use of the Quick Fix mark in the QuickFix.Plus website domain name. Spectrum alleges that FOLC engaged in cyberpiracy in violation of 15 U.S.C. § 1125(d). (*See* Am. Compl., Doc. 6, ¶¶ 53–57.) Cyberpiracy, or "cybersquatting" as it is often called, "occurs when a person other than the trademark holder registers the domain name of a well[-]known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *DaimlerChrysler v. Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004). To establish a cyberpiracy claim under 15 U.S.C. § 1125(d), a party must show that: "(1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, plaintiff's mark; and (4) defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." *Id.* (citing *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 546 (6th Cir. 2003)). To determine whether a party registered a domain name with "a bad faith intent to profit," 15 U.S.C. § 1125(d)(1)(B) provides a non-exhaustive list

6

of nine factors that a court may consider.

Taking the relevant factors in turn, Spectrum first asserts that it has valid and enforceable trademark rights to the Quick Fix mark. (Am. Compl., Doc. 6, ¶¶ 18–19, 31.) Second, Spectrum's federal registration of the Quick Fix mark entitles the mark to a presumption of distinctiveness. *AutoZone*, 373 F.3d at 792–93. Third, the QuickFix.Plus domain name is identical to the Quick Fix mark, as it consists of the mark with only the ".plus" domain suffix added, and the addition of domain suffix to a protected mark does not factor into the Court's analysis as to whether the domain name is identical or confusingly similar to the mark. *Diners Club Int'l Ltd. v. Privatedinersclubportal.co.uk*, No. 24-CV-1559, 2025 U.S. Dist. LEXIS 32168, at *12 (D. Ariz. Feb. 21, 2025). Fourth, FOLC uses the Quick Fix mark in the QuickFix.Plus domain name to host a website that sells synthetic urine. (Am. Compl., Doc. 6, ¶¶ 23–26.) Fifth and finally, FOLC acted with a bad faith intent to profit because: (1) FOLC has no intellectual property rights in the Quick Fix mark; (2) the domain name does not consist of FOLC's legal or commonly used name; (3) there is nothing to suggest that FOLC used the QuickFix.Plus domain to engage in the bona fide offering of goods or services, and (4) FOLC used the QuickFix.Plus website in an attempt to divert buyers of synthetic urine products away from Spectrum's sales platforms. 15 U.S.C. § 1125(d)(1)(B)(i)(I), (II), (IV), (V).

Based on this analysis, the Court finds that Spectrum has established that FOLC engaged in cyberpiracy in violation of 15 U.S.C. § 1125(d). Therefore, Spectrum is entitled

7

to an entry of default judgment on its cyberpiracy claim.

### III. Disgorgement Damages

Next, the Court will consider Spectrum's request for disgorgement damages under the Lanham Act. "[S]ubject to the principles of equity," a plaintiff may recover "defendant's profits." 15 U.S.C. § 1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* Thus, a court must "assume that the defendant's profits equal his gross sales unless he presents evidence of his costs." *Taylor v. Thomas*, 624 F. App'x 322, 328 (6th Cir. 2015). "The Court may rely on affidavits submitted on the issue of damages." *P&G Health & Longterm Disability Plan v. Molinary*, No. 1:18-CV-283, 2019 U.S. Dist. LEXIS 13667, at *1 (S.D. Ohio Jan. 29, 2019).

Here, Spectrum need only show FOLC's sales. To that end, it requests $202,351.61. (Motion for Default Judgment, Doc. 23, Pg. ID 143; *see also* Motion for Default Judgment, Doc. 26, Pg. ID 239–40; Ex. C-1, Doc. 26-2, Pg. ID 254.) FOLC has the burden to prove any costs or deductions from its demonstrated sales figure, but it has not done so. Thus, the Court awards Spectrum damages in the amount of $202,351.61.

### IV. Permanent Injunction

Based on FOLC's violation of the Lanham Act, Spectrum requests that this Court enter a permanent injunction enjoining FOLC from further infringement of the Quick Fix and Q-Clock marks. (Am. Compl., Doc. 6, Pg. ID 71.) Courts may issue permanent injunctions "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of the Lanham Act. 15 U.S.C. § 1116(a). Given that

Spectrum has shown success on the merits above, it must demonstrate the following: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) "that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) it is in the public's interest to issue the injunction. *Audi*, 469 F.3d at 550. "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

In trademark cases, a plaintiff establishes the first factor of the permanent injunction analysis by showing that the defendant's use of the trademark is likely to cause confusion. *Cardinal Servs. v. Cardinal Staffing Sols., Inc.*, No. 2:19-CV-1743, 2019 U.S. Dist. LEXIS 208873, at *6 (S.D. Ohio Dec. 4, 2019) (citing *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)). As outlined above, FOLC's use of the Quick Fix and Q-Clock marks is likely to cause consumer confusion. Thus, the first factor weighs in favor of a permanent injunction.

As to the second factor, there is no adequate remedy at law if infringement could potentially occur in the future. *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 883 (S.D. Ohio 2007). The potential for future infringement by FOLC is evident here. Thus, the second factor weighs in favor of a permanent injunction.

In analyzing the third factor, the Court weighs the balance of hardships between the parties. A permanent injunction will result in no harm to FOLC because "an injunction will merely require [FOLC] to comply with the . . . Lanham Act." *Microsoft Corp.*, 490 F. Supp. 2d at 883. In contrast, Spectrum faces extensive hardship from FOLC's

infringing activity, including a loss of the goodwill and reputation associated with the Quick Fix and Q-Clock marks. Therefore, the third factor weighs in favor of a permanent injunction.

Finally, this Court must determine whether a permanent injunction is in the public interest. Enforcing trademarks and preventing consumer confusion inherently serve the public interest. *Cardinal Servs.*, 2019 U.S. Dist. LEXIS 208873, at *7 (citing *Park'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985)). Indeed, a permanent injunction in cases involving the Lanham Act effectuates "two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006). Because a permanent injunction here would prevent consumer confusion and would protect Spectrum's interest in its trademarks, the fourth factor weighs in favor of a permanent injunction.

In light of the foregoing analysis, the Court finds a permanent injunction restraining FOLC from its continued infringement of the Quick Fix and Q-Clock marks appropriate.

V. **Transfer of Infringing Domain Name**

Spectrum requests that this Court order the transfer of the QuickFix.Plus website from FOLC to Spectrum. (Am. Complaint, Doc. 6, Pg. ID 71.) "In any civil action involving the registration, trafficking, or use of a domain name under [15 U.S.C. § 1125(d)], a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C). In consideration of the

10

cyberpiracy analysis above, the Court orders the transfer of the QuickFix.Plus website from FOLC to Spectrum.

## VI. Attorneys' Fees and Costs

Finally, Spectrum requests that the Court award attorneys' fees in the amount of $51,179.80 and costs in the amount of $405. (Motion for Default Judgment, Doc. 26, Pg. ID 240–42.) The Lanham Act authorizes this Court to award reasonable attorneys' fees and costs in exceptional cases. 15 U.S.C. § 117(a). "Such an award is available in trademark infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Microsoft Corp.*, 490 F. Supp. 2d at 883. A defendant's "non-responsiveness and complete failure to address [its] case in Court renders [a] case exceptional and merits an award of attorney's fees." *Gillette Co. v. Save & Disc. LLC*, No. 1:15-CV-636, 2016 U.S. Dist. LEXIS 90925, at *10 (S.D. Ohio July 13, 2016).

Here, Spectrum alleged in its Amended Complaint that FOLC's infringing conduct was willful and intentional. (Am. Compl., Doc. 6, ¶ 38.) FOLC also failed to defend itself against Spectrum's allegations and has not appeared in this matter. Given these facts, Spectrum is entitled to attorneys' fees and costs.

### A. Attorneys' Fees

To determine an award of reasonable attorneys' fees, courts look to the "lodestar" amount, "which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). "The key requirement for an award of attorney's fees is that the documentation offered in support of the hours charged must be of sufficient detail and

11

probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Id.* at 553. "[T]he district court is required to give a clear explanation" for its award calculation. *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004).

### i. Reasonable Hourly Rate

The Court has broad discretion in determining what constitutes a reasonable hourly rate. *Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997). The reasonable hourly rate is generally the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The prevailing market rate is the rate that lawyers of comparable skill and experience can reasonably expect to command in the venue of the court of record. *Geer v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Courts may also look to other markets, such as a national market, an area of specialization, or any other appropriate market for a prevailing market rate. *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983). Additionally, "[t]he Court may also consider an attorney's own normal billing rates to help calculate a reasonable fee." *MCP IP, LLC v. .30-06 Outdoors, LLC*, No. 2:21-CV-581, 2023 U.S. Dist. LEXIS 59691, at *3 (S.D. Ohio Apr. 4, 2023).

Here, Spectrum seeks a rate of $526 per hour for a partner-level attorney with twenty years of experience. (Motion for Default Judgment, Doc. 15, Pg. ID 241–42; Cavanagh Decl., Doc. 26-1, ¶¶ 2, 11–13.) Spectrum's counsel notes that his rate is consistent with the rates of other Cincinnati intellectual property lawyers who have comparable levels of experience. (Cavanagh Decl., Doc. 26-1, ¶¶ 14–15.) Spectrum's

12

counsel also highlights that the $526 rate is over $100 less than the $635 hourly rate he normally charges. (Motion for Default Judgment, Doc. 15, Pg. ID 242.) Further, this Court has found similar rates for intellectual property attorneys with comparable experience to be reasonable. *See, e.g., RAK Trademarks, LLC v. Comfort Dental Mason, LLC*, No. 1:22-CV-137, 2023 U.S. Dist. LEXIS 94248, at *4–5 (S.D. Ohio May 30, 2023) (finding a $600 rate reasonable for a partner with 28 years of intellectual property experience and a $435 rate reasonable for a partner with 19 years of experience). Accordingly, the Court finds Spectrum's counsel's hourly rate to be reasonable.

### ii. Reasonable Number of Hours

When determining the reasonable number of hours worked, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). In addition, "the documentation provided in support of the hours charged must be sufficiently detailed to enable the court to determine, with a high degree of certainty, that such hours were actually and reasonably expended." *Brown v. Halsted Fin. Servs., LLC*, No. 3:12-CV-308, 2013 U.S. Dist. LEXIS 26144, at *6 (S.D. Ohio Feb. 26, 2013) (citing *Bench Billboard Co. v. City of Toledo*, 759 F. Supp. 2d 905, 913 (N.D Ohio 2010)). "Where the documentation is inadequate, a court may reduce the award accordingly." *Id.*

Here, Spectrum's counsel billed 97.3 hours. (Cavanagh Decl., Doc. 26-1, ¶ 16.) Counsel submitted an itemized pro forma invoice detailing the time billed and tasks performed. (Pro Forma Invoice, Doc. 26-3, Pg. ID 168.) The pro forma invoice details

13

actions performed by counsel, such as drafting, editing, revising, and reviewing the various documents that have come before this Court, as well as communicating with opposing counsel to discuss settlement. (*Id.*) A reasonable attorney would have believed that these hours needed to be reasonably expended in pursuit of default judgment related to a case involving trademark infringement and cyberpiracy. Additionally, the pro forma invoice provided in support of the hours expended is sufficiently detailed to support a conclusion that these hours were actually and reasonably expended. (*See id.*) Accordingly, the hours expended by Spectrum's counsel are reasonable.

### iii. The Lodestar Amount

The lodestar method results in a finding that the rate sought and hours expended by Spectrum's counsel are reasonable. Accordingly, Spectrum is awarded a total of $51,179.80 in attorneys' fees.

### B. Costs

Next, Spectrum seeks an award of costs in the amount of $405. (Motion for Default Judgment, Doc. 15, Pg. ID 143.) However, "[c]osts are taxed against [a defendant] as a matter of course fourteen days after [a plaintiff] files a notice of costs with the Clerk of Court's Office." *GS Holistic, LLC v. Mr. Puff Kenard LLC*, No. 1:23-CV-709, 2025 U.S. Dist. LEXIS 176757, at *6 n.2 (S.D. Ohio Sep. 10, 2025) (citing Fed. R. Civ. P. 54(d)(1)); *see also* S.D. Ohio Civ. R. 54.1. As such, the Court need not award costs at this time.

## CONCLUSION

For the foregoing reasons, Spectrum's Motion for Default Judgment (Docs. 23, 26) is **GRANTED IN PART**. The Court hereby **ORDERS** that:

1. Spectrum is **AWARDED** $202,351.61 in disgorgement damages under 15 U.S.C. § 1117(a);

2. Spectrum is **AWARDED** $51,179.80 in attorneys' fees;

3. Spectrum's request for costs is **DENIED WITHOUT PREJUDICE** at this time;

4. FOLC **SHALL TRANSFER** ownership and registration of the <quickfix.plus> domain name to Spectrum;

5. FOLC and its officers, agents, servants, employees, attorneys, and any persons in active concert or participation with FOLC or those persons are **PERMANENTLY RESTRAINED AND ENJOINED** from:

    a. using the Quick Fix or Q-Clock marks, or anything confusingly similar to those marks in commerce, including (without limitation) on or in connection with websites, email addresses, domain names, products, offerings of services or products, or any digital or print advertising materials; and

    b. otherwise infringing upon the Quick Fix and Q-Clock marks.

6. This matter is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND